```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

CHAMBERS,                          .
                                   .
       Plaintiffs,                 .
                                   . Case Nos. 11-cv-06994,
vs.                                . 12-2298, 12-2299, 11-6995,
                                   . 12-2300, 12-3784
CITY OF NEWARK, et al.,            .
                                   . Newark, New Jersey
       Defendants.                 . April 30, 2014
                                   .



                       TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE CATHY L. WALDOR
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

 For the Plaintiffs:     NATHANIEL M. DAVIS, ESQ.
                         Military Park Building
                         60 Park Place, Suite 208
                         Newark, NJ 07102
                         973-792-9005
                         Email: Ndavisesq@aol.com

                         ANTHONY C. MACK, ESQ.
                         60 Park Place
                         Suite 1104
                         Newark, NJ 07102
                         (973) 624-7800
                         Email: Amacklaw@hotmail.com

 For the Defendants:     AVION MONIQUE BENJAMIN, ESQ.
                         Corporation Counsel Office
                         City of Newark
                         920 Broad Street, Room 316
                         Newark, NJ 07102
                         973-733-3880
                         Email: Benjamina@ci.newark.nj.us
```

```
 1  Audio Operator:

 2  Transcription Service:        KING TRANSCRIPTION SERVICES
                                  901 Route 23 South, Center Ste. 3
 3                                Pompton Plains, NJ 07444
                                  (973) 237-6080
 4

 5  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1                  (Commencement of proceedings at 10:53 A.M.)

 2

 3                  THE COURT:  I'm sorry.  We're on the record.  It is

 4    April 30th at approximately 5 to 11 in the morning.  We're

 5    here.

 6           (Interruption in proceedings)

 7                  THE COURT:  All right.  Good.  Is there a mic?

 8    Yeah, good.  Can you turn the mic towards the phone that's

 9    down there?  The microphone.  Thank you.

10                  And this is Case Number 11-6994, 12-2298, 12-2299,

11    11-6995, 12-2300, and 12-3784.

12                  Could I have appearances of counsel, please?

13                  MR. MACK:  Anthony Mack, Mack -- on behalf of Ciara

14    Stanley by her guardian, Camille Stanley.

15                  THE COURT:  Thank you.

16                  MR. DAVIS:  Nathaniel Davis for remaining

17    plaintiffs, Your Honor.

18                  THE COURT:  Thank.

19                  MS. BENJAMIN:  Good morning, Your Honor, Avion

20    Benjamin, assistant corporation counsel on behalf of the City

21    of Newark.

22                  THE COURT:  Okay.  The reason that we're here is

23    for the formal "friendly" hearing.  We were on the record,

24    Mr. Mack and Mr. Davis.  Ms. Benjamin, were you here that --

25    then, as well as?  Yes, you were.

```
 1              MS. BENJAMIN:  Yes.

 2              THE COURT:  And we had a discussion about a

 3    proposed order to the Surrogate.  So we're going to finalize

 4    the case today and have all the parties attest to their

 5    understanding of the settlement and issue a recommendation

 6    for Judge Hayden, if all goes as expected.

 7              So this case -- I'm going to outline the case, and

 8    then if anybody needs to add to it or help me out with what

 9    the facts are, I'm a little foggy as to the relationships of

10    everybody.  So I may need help, Mr. Davis and Mr. Mack, as to

11    that.

12              But as I understand it, there's a minor -- one --

13    excuse me -- there was one minor plaintiff?

14              MR. DAVIS:  No.  There was several minor

15    plaintiffs, Your Honor.

16              THE COURT:  Okay.  And Ms. McKeon is the *guardian*

17    *ad litem* for Jarrett Chambers?

18              MR. DAVIS:  Well, he's no longer a minor,

19    Your Honor.  He's an adult now.

20              THE COURT:  Right.

21              MR. DAVIS:  At the time we settled the matter, he

22    has -- he was 18 years, he was an adult at the time.

23              THE COURT:  Is he here today?

24              MR. DAVIS:  This is Jarrett Parks [*sic*].

25    Jarrett --
```

1              THE COURT:  Thank you for coming, sir.

2              And -- but at the time the settlement was accepted,

3    his *guardian ad litem* was Ms. McKeon?

4              MR. DAVIS:  Yes, but she was -- he was adult at

5    that time, and he took -- he took ownership of his own

6    estate, Your Honor.  He was an adult.

7              THE COURT:  Oh, he did.

8              MR. DAVIS:  Yes.

9              THE COURT:  So there was no effective guardian in

10   his case?

11             MR. DAVIS:  No.

12             THE COURT:  All right.  And who do we have on the

13   telephone?

14             MS. PAUL:  Ktryna Paul.

15             THE COURT:  Okay.  Thank you.

16             So the allegations in the complaint, which was

17   filed November 29th, 2011, are that the -- the defendants

18   used excessive force in the scope of their employment,

19   resulting in the death of one Rahjon Chambers.  And what is

20   Rahjon Chambers' relationship with Jarrett Chambers?

21             MR. DAVIS:  Brother, Your Honor.

22             THE COURT:  All right.

23             MR. DAVIS:  At the time, he was also acting as a

24   guardian.

25             THE COURT:  Brother-guardian.

```
 1            MR. DAVIS:  Yes.

 2            THE COURT:  I understand.

 3            And this incident occurred on November 6th, 2010.

 4  It is also alleged that there are deprivation of certain

 5  civil rights, failure to follow practice and procedures,

 6  failure to properly supervise, discipline, and control police

 7  officers, failure to hire and train properly, and a

 8  respondeat superior count, common law assault and battery

 9  count, and a wrongful death count.

10            Does that summarize the allegations in the original

11  complaint?

12            MR. MACK:  Yes, Your Honor.

13            THE COURT:  And there were many counts of

14  violations of 42-1983, not just one civil rights count.

15  Correct?

16            MR. MACK:  Yes, Your Honor.

17            THE COURT:  All right.  So I have -- and I have

18  been supplied by counsel in our prior hearing -- the

19  breakdown and settlement statement.  And I want everyone here

20  to attest to the fact that they understand what the

21  settlement was and whether or not they agree with the -- the

22  settlement.

23            The gross recovery, as I understand it, was

24  $350,000.  Is that correct, Ms. Benjamin?

25            MS. BENJAMIN:  Yes, Your Honor.
```

     1                  THE COURT:  Mr. Mack?

     2                  MR. MACK:  That's correct, Judge.

     3                  MR. DAVIS:  Yes, Your Honor.

     4                  THE COURT:  Okay.  And do all the parties here --

     5      let's introduce everybody so I know who's who on the record,

     6      if you don't mind.

     7                  MR. DAVIS:  Do you want them to stand up and

     8      introduce themselves, Your Honor?

     9                  THE COURT:  Sure.

    10                  MS. JOHNSON:  Hi, I'm Marqueta Johnson, guardian to

    11      Sanai Chambers.

    12                  THE COURT:  Okay.

    13                  MR. CHAMBERS:  I'm Jarrett Chambers, Rahjon's

    14      brother.

    15                  THE COURT:  Okay.

    16                  MS. LEWIS:  Fatima Lewis, guardian of Rahmar

    17      Chambers.

    18                  MS. JACKSON:  Tihesha Jackson, guardian of Jason

    19      Jackson.

    20                  MS. STANLEY:  Camille Stanley, guardian of Ciara

    21      Stanley.

    22                  THE COURT:  All right.  Thank you.

    23                  MR. DAVIS:  And, Your Honor, there's -- on the

    24      phone, Ktryna Paul.

    25                  THE COURT:  Yes.  And, Ms. Paul, what is your

```
 1   position in this case?  Is she a guardian?
 2            MR. DAVIS:  She's a guardian of Marlie Chambers and
 3   Rahmar [sic] Chambers.
 4            MS. PAUL:  Marlie and Rahjon Chambers.
 5            MR. DAVIS:  Rahjon.
 6            THE COURT:  Okay.  Okay.  Thank you.
 7            And so how many receiving parties are there in this
 8   settlement total?  The actual parties, not the guardians.
 9            MR. DAVIS:  Seven.
10            THE COURT:  Seven.  Okay.  So $350,000 is a gross
11   recovery.  As I understand it, there were expert fees to
12   Dr. Chapman of $8,344.50.  There was a balance of -- last
13   time we met -- of $3,334.50.  Is that correct?  Do you
14   remember that?
15            MR. DAVIS:  Yes, Your Honor, we had to pay that
16   because he had filed a suit against us.
17            THE COURT:  And I authorized you to disburse that
18   after you were in court.
19            MR. DAVIS:  Yes.  Yes, Your Honor.
20            THE COURT:  Then there was a Dr. Ali Sadegh?
21   S-a-d-e-g-h, $4,879.  The balance owed was $2,144.  And that
22   was authorized for payment as well, as I understand.
23   Correct?
24            MR. DAVIS:  Yes, Your Honor.  He was the expert in
25   regards to motor vehicle liability expert.
```

1                THE COURT:  Okay.  With respect to deposition fees,

2     McCarthy, $582; Robertella, police officer, 603.06; Police

3     Officer Fereira, 1381.38; Robles, 652.87; Domingues, 242.25;

4     and Holmes, 450.25.  The autopsy report, $1930.50; the

5     prosecutor's file, copying, 24.55 [*sic*]; copying service

6     38.09.

7                So the total in various expenses was $19,128.35.

8     Correct?

9                MR. DAVIS:  Yes, Your Honor.

10               THE COURT:  All right.

11               Do all the guardians here and Mr. Chambers agree

12    and understand that those were the expenses that were

13    disbursed and -- out of the $350,000?  Were you aware of

14    that?  Were you made aware of that?

15               UNIDENTIFIED SPEAKERS:  Yes.

16               THE COURT:

17               MS. PAUL:  Yes.

18               THE COURT:  Okay.  So everybody here, all the

19    guardians agree to that.

20               Where, in fact, are the -- the children, if you

21    will?

22               UNIDENTIFIED SPEAKERS:  In school.

23               MR. DAVIS:  In school, Your Honor.

24               THE COURT:  Okay.

25               MR. MACK:  Judge, Anthony Mack for Ms. Stanley.

1          For clarity of the record, if you recall, the case

2  was pending when Ms. Stanley retained my office, and we filed

3  a complaint, and they were merged.  There were a few

4  additional expenses that pertained solely to Ms. Stanley, and

5  I submitted a settlement statement for her.  And it was

6  attached to your report and recommendation that was filed on

7  February 4th, I believe.  Ms. Stanley signed off on that.

8  She has that in front of her.  I don't know if you want to go

9  over that one as well.

10          THE COURT:  Could you please --

11          MR. MACK:  Okay --

12          THE COURT:  Would you find that, Mr. Mack?

13          MR. MACK:  Okay.  There was an expense that

14  pertained solely to Ms. Stanley for a deposition transcript

15  for $88.50; her complaint filing fee for $350; reimbursement

16  to my office for expenses paid to Dr. Chapman for $500;

17  guaranteed subpoena for service of process $264.90; and the

18  Surrogate filing fee of $65.

19          THE COURT:  And what's the grand total of that?

20          MR. MACK:  The expenses -- the total of that --

21          THE COURT:  Well, while you're figuring that out,

22  what I need to do is swear all the guardians.

23          MR. MACK:  Okay.

24          And because there are so many guardians and

25  participants, again, I -- you're going to have to help me

 1    with who you're the guardian for and what your understanding

 2    is.

 3              So let's start with the woman on the left, your

 4    name again?

 5              MS. JOHNSON:  Marqueta Johnson.

 6              THE COURT:  Okay.  Ms. Johnson.

 7    M A R Q U E T A   J O H N S O N, PLAINTIFF'S WITNESS, SWORN

 8              COURT OFFICER:  State your name again for the

 9    record.

10              MS. JOHNSON:  Marqueta Johnson.

11              THE COURT:  Ms. Johnson, who are you the guardian?

12              MS. JOHNSON:  Sanai Chambers.

13              THE COURT:  And how old is she --

14              MS. JOHNSON:  She's three.

15              THE COURT:  She's three.

16              MS. JOHNSON:  Yes.

17              THE COURT:  All right.  So she was really an

18    infant.

19              MS. JOHNSON:  She was two years old at the time.

20              THE COURT:  -- when this settled.

21              MS. JOHNSON:  Yes.

22              THE COURT:  All right.  And you understand that

23    everything we discuss today is the final settlement.  There

24    will be no separate or other action related to this case?

25              MS. JOHNSON:  Yes, I do.

1            THE COURT:  And do you know the amount of money

2      that you agreed to settle her case on her behalf was?

3            MS. JOHNSON:  You mean the total?  350,000.

4            THE COURT:  And do you remember what portion of

5      that she received, Mr. Davis?

6            MR. DAVIS:  She was received a --

7            THE COURT:  It was 37?

8            MR. DAVIS:  -- gross recovery of 53,045.27.

9            THE COURT:  That's the gross recovery?

10           MR. DAVIS:  Yes, but a net recovery of $39,341.89.

11           Each child had their own individual complaint

12     filed, and then they were merged.  So she had a filing fee of

13     $350; a Surrogate fee $ of 65; and a deposition fee of

14     $174.42.

15           THE COURT:  And she is in school today and could

16     not be present?

17           MS. JOHNSON:  Well, she could have been, but I

18     wasn't aware that I needed to bring her, because she's in

19     school.

20           THE COURT:  Okay.  Were there signed certifications

21     by each guardian?

22           MR. DAVIS:  Yes.

23           THE COURT:  I thought that's what you --

24           MR. DAVIS:  Yes, they signed.  They all signed the

25     release.

1            THE COURT:  So they signed the release that this

2    money was in full satisfaction?

3            MR. DAVIS:  Yes, Your Honor.

4            THE COURT:  And how is she doing physically?  Is

5    she healthy?

6            MS. JOHNSON:  Yes, she's great.  She's wonderful.

7            THE COURT:  Okay.  Are you satisfied with the --

8    you can sit down.  You don't have to stand up.

9            Are you satisfied with Mr. Davis's services and

10   have you been satisfied with his services?

11           MS. JOHNSON:  Yes.

12           THE COURT:  Okay.  Let's move on.

13           Mr. Chambers.

14           MR. CHAMBERS:  Yes.

15           THE COURT:  You were an adult at the time of this

16   settlement, 18.  Is that correct?

17           MR. CHAMBERS:  Yes.

18           THE COURT:  And what was the amount, the settlement

19   that you received, if you remember?

20           MR. CHAMBERS:  $12,500.

21           THE COURT:  And that is less than the settlement of

22   the other children.  Do you understand that?

23           MR. DAVIS:  Yes, Your Honor, there was the issue of

24   guardianship at that time, so they agreed to -- he would take

25   less -- less a settlement than the other children, because

    1   there was a issue with the guardianship.

    2            THE COURT:  All right.

    3            MR. DAVIS:  They said he was entitled to some

    4   monies from the brother's estate.

    5            THE COURT:  Okay.

    6            MR. DAVIS:  And as an adult, he -- I mean, he was

    7   given the option to seek legal counsel on that matter.  And

    8   he -- I think he went to seek legal counsel, and he came back

    9   to me and agreed to that settlement amount.

   10            THE COURT:  Without counsel?  Without separate

   11   counsel?

   12            MR. DAVIS:  Yes.

   13            THE COURT:  All right.

   14            So, Mr. Chambers, you were not represented at the

   15   time of settlement?

   16            MR. DAVIS:  He wasn't.  He was represented at the

   17   time of settlement, Your Honor.  But when -- when the

   18   parties -- when the parties had an issue of him receiving a

   19   full amount --

   20            THE COURT:  Yes.

   21            MR. DAVIS:  -- as the rest of the children --

   22            THE COURT:  Yes.

   23            MR. DAVIS:  -- I could not represent him on that

   24   matter, because there would be the conflict.

   25            THE COURT:  Right.

1             MR. DAVIS:  So he went and sought -- he was told to

2     seek other counsel in regards to that matter, whether there

3     would be another litigation as to whether he was entitled to

4     a full amount.

5             Rather than that, they worked out a compromise

6     amongst themselves and he would receive a lesser amount.

7             THE COURT:  Okay.

8             Mr. -- Mr. Chambers, I have to be sure that you

9     understand and you agree to that voluntarily.

10            MR. CHAMBERS:  Yes.

11            THE COURT:  So the fact that you received

12    $12,000-some-odd as opposed to $37,000 that the others

13    received, about that in net, you understand that there's

14    obviously a difference in the amount you received and the

15    amount the other children received.

16            MR. CHAMBERS:  Yes.

17            THE COURT:  All right.  And did you seek

18    independent counsel to advise you on that?

19            MR. CHAMBERS:  No.  No.

20            THE COURT:  And you made your decision by yourself

21    to -- to talk with the guardians and the children and accept

22    less money?

23            MR. CHAMBERS:  Yes.

24            THE COURT:  And are you completely satisfied with

25    the amount of the settlement that you received?

```
 1              MR. CHAMBERS:  Yes.

 2              THE COURT:  Mr. Chambers, you know that you can't

 3    come back and enter into any lawsuit because you want more

 4    money from the estate.  You understand that?

 5              MR. CHAMBERS:  Yes.

 6              THE COURT:  All right.

 7              How are you doing now?  Are you working?  You?

 8              MR. CHAMBERS:  I'm in school now.

 9              THE COURT:  You're in school.

10              MR. CHAMBERS:  Yes.

11              THE COURT:  Where are you in school?

12              MR. CHAMBERS:  At Barringer.

13              THE COURT:  Okay.  What do you go to school for?

14              MS. BENJAMIN:  Finish high school.

15              THE COURT:  Finish high school?

16              MR. CHAMBERS:  Yes.

17              THE COURT:  Okay.  You got any plans after that?

18              MR. CHAMBERS:  I'm going to Essex County and then

19    transfer out.

20              THE COURT:  Essex County what?

21              MR. CHAMBERS:  And then transfer out to -- state.

22              THE COURT:  Oh, okay.  And so what do you want to

23    be when you grow up?

24              MR. CHAMBERS:  I don't even know yet.  I --

25    something with computers.
```

          1                THE COURT:  Well, you keep an open mind.  Good.

          2                MR. CHAMBERS:  I will.

          3                THE COURT:  So you're doing fine and everything's

          4    okay in your life?

          5                MR. CHAMBERS:  Yes.

          6                THE COURT:  Okay.  Good.  Thank you.

          7                MR. DAVIS:  If you want to see, these are documents

          8    that I had him sign recognizing that he had a right to go

          9    seek of counsel.

         10                THE COURT:  Thank you.  Let -- can we have that

         11    copy?  Because I don't think we have that.  We'll make

         12    copies.

         13                MR. DAVIS:  All right.

         14                THE COURT:  And these reflect your discussion with

         15    him pertaining to the potential conflict and that he is

         16    entitled to seek outside counsel.  Is that correct?

         17                MR. DAVIS:  Yes, Your Honor.

         18                THE COURT:  Thank you.

         19                All right.  Who is next?

         20                MS. LEWIS:  Hi, my name is Fatima Lewis.  I'm the

         21    guardian of Rahmar Chambers.

         22                THE COURT:  And how would is he?

         23                MS. LEWIS:  He's four years old.

         24                MS. BENJAMIN:  Judge, I don't mean to interrupt

         25    you --

1          THE COURT:  Please do.

2          MS. BENJAMIN:  But I know so far only the first one

3    has been sworn in.  I don't know if you want to swear in

4    everybody individually.

5          THE COURT:  Thank you so much, Ms. Benjamin.

6          I think that I have to remember to swear people in,

7    because the oath doesn't apply to everybody.  So we're going

8    to swear Mr. Chambers in, and then we'll swear you and

9    Ms. Lewis.  Okay?

10         MS. LEWIS:  Okay.

11         THE COURT:  Thank you, Ms. Benjamin.

12         The other thing I don't realize is that the record

13   is a recorder, so I don't ask people, if you look at the

14   transcript, to identify themselves, and the transcript has

15   you, Mr. Davis as some man speaking.

16         MR. DAVIS:  That's all right.

17         THE COURT:  So it's not your fault.  I -- I just

18   assume the court reporter's putting Mr. Davis and Mr. Mack or

19   Ms. Benjamin, but there's no court reporter.

20         MR. DAVIS:  Yes.

21         THE COURT:  So as soon as Mr. Gorman comes out.

22         Mr. Gorman, we need to swear everybody.  So we're

23   going to swear Mr. Chambers in retroactively.  I'm sorry.

24   J A R R E T T   C H A M B E R S, PLAINTIFF'S WITNESS, SWORN

25         COURT OFFICER:  State your name for the record,

 1  please.

 2          MR. CHAMBERS:  Jarrett Chambers.

 3          THE COURT:  All right.  Before we swear everybody

 4  else in, Mr. Chambers, you've just been sworn, but a few

 5  minutes ago, you attested to the fact that you understood the

 6  settlement, you understood that $12,000-some-odd is

 7  substantially less than the other children received, you

 8  decided not to seek separate counsel, you accepted that

 9  settlement voluntarily, and you understand that there will be

10  no further litigation in this case.  Is that correct?

11          MR. CHAMBERS:  Yes.

12          THE COURT:  And therefore everything you told me

13  before, as now, is true.  Correct?

14          MR. CHAMBERS:  Yes.

15          THE COURT:  Okay.

16          Mr. Gorman, let's just swear everybody in.

17  F A T I M A   L E W I S, PLAINTIFF'S WITNESS, SWORN

18          COURT OFFICER:  State your name, please.

19          MS. LEWIS:  Fatima Lewis.

20          COURT OFFICER:  Shall we do them all?

21          THE COURT:  Yeah.  Please.  There's only two more.

22          And we have to swear Ms. Paul on the telephone too.

23  T I H E S H A   J A C K S O N, PLAINTIFF'S WITNESS, SWORN

24  K T R Y N A   P A U L, PLAINTIFF'S WITNESS, SWORN

25          COURT OFFICER:  State your name.

```
 1                MS. JACKSON:  Tihesha.

 2                THE COURT:  Okay.  That's good.

 3                So, Ms. Paul, what's the -- what's your name?  Your

 4      first name?

 5                MS. PAUL:  Ktryna Paul.

 6                THE COURT:  Right.  Okay.  So Ms. Paul has been

 7      sworn and?

 8                MS. JACKSON:  Tihesha Jackson --

 9                THE COURT:  Ms. Jackson has been sworn.

10                Okay.  One more.

11      C A M I L L E   S T A N L E Y, PLAINTIFF'S WITNESS, SWORN

12                COURT OFFICER:  State your name for the record,

13      please.

14                MS. STANLEY:  Camille Stanley.

15                THE COURT:  Okay.

16                So, Ms. Lewis, I think we were -- we were working

17      on your guardianship.

18                MS. LEWIS:  Rahmar Chambers.

19                THE COURT:  And you stated that he was four years

20      old.

21                MS. LEWIS:  Yes.

22                THE COURT:  Correct?  And at the time he was three

23      then?  At the time of the settlement?

24                MS. LEWIS:  Oh, no.

25                THE COURT:  Two?
```

```
 1              MS. LEWIS:  He still was four years old.  He's

 2  going to be five.

 3              THE COURT:  Okay.

 4              MS. LEWIS:  So he still was four years old.

 5              THE COURT:  I understand.  Thank you.

 6          And do you feel that the settlement he received,

 7  which was some $37,000; is that correct?

 8              MS. LEWIS:  Yes.

 9              THE COURT:  After the attorneys' fees and the

10  different expenses were paid, do you feel that that was a

11  fair settlement?

12              MS. LEWIS:  Yes.

13              THE COURT:  Can we get -- was it 39,000, Mr. Davis?

14  Or 37?  39,397.58.

15              MR. DAVIS:  39 -- yes, 39,000.

16              THE COURT:  Okay.  Thank you.

17          And you understand that you can't come back to

18  court on his behalf in this case, that this is the end of the

19  case?

20              MS. LEWIS:  Yes, I do.

21              THE COURT:  And are you satisfied with your

22  representation in this case?  Your lawyer?

23          Mr. Davis, did you -- did you represent?

24              MR. DAVIS:  Yes.

25              THE COURT:  She's not so sure she's satisfied with
```

```
 1  you, though.
 2            MS. LEWIS:  Yes.
 3            THE COURT:  Are you sure?  You can tell the truth.
 4            MS. LEWIS:  No, not really, but ...
 5            THE COURT:  Okay.
 6            MS. LEWIS:  It's okay.
 7            THE COURT:  All right.  And does that have to do
 8  with the settlement to this case?
 9            MS. LEWIS:  No.
10            THE COURT:  Other issues that have nothing to do
11  with the settlement?
12            MS. LEWIS:  Yes.
13            THE COURT:  Okay.  Thank you.  Thank you very much.
14            MS. LEWIS:  No problem.
15            THE COURT:  So once again, you're satisfied with
16  the settlement on behalf of the child, and --
17            MS. LEWIS:  Yes.
18            THE COURT:  -- that'll be the end of his case.
19            And how is he doing?  Is he in preschool or school?
20            MS. LEWIS:  He's in pre-K.
21            THE COURT:  Pre-K.  Does he like pre-K?
22            MS. LEWIS:  Yes.
23            THE COURT:  Okay.  Well, I guess it's good to like
24  it at 4.  We'll see what happens after that.
25            All right.
```

 1              Ms. Jackson.

 2              MS. JACKSON:  Yes.

 3              THE COURT:  Who --

 4              MS. JACKSON:  Excuse me.  I'm very sorry.  I'm

 5    battling a cold.

 6              THE COURT:  Okay.  Maybe move the microphone up to

 7    him -- or Ms. Jackson.  Thank you.

 8              All right.  So who are you the guardian for?

 9              MS. JACKSON:  Jason Jackson.

10              THE COURT:  And how old is Jason Jackson?

11              MS. JACKSON:  Jason is now 17.

12              THE COURT:  17.  What is Jason doing?

13              MS. JACKSON:  Right now?

14              THE COURT:  Yes.

15              MS. JACKSON:  He's in school.

16              THE COURT:  He's in school?

17              MS. JACKSON:  He's in senior year, a senior in high

18    school.

19              THE COURT:  Where does he go to school?

20              MS. JACKSON:  Montclair High School.

21              THE COURT:  Oh, okay.  I used to have an office on

22    Park Street right near the high school.

23              MS. JACKSON:  It's two blocks from my house.

24              THE COURT:  Oh, so you live down the street.

25              MS. JACKSON:  I do.

```
 1                THE COURT:  Are you satisfied -- are you his

 2     mother?

 3                MS. JACKSON:  Yes.

 4                THE COURT:  Okay.  Are you satisfied with the

 5     settlement and the monies that he received, which I believe,

 6     again, was $39,397?

 7                MS. JACKSON:  Yes, that is correct.

 8                THE COURT:  And you understand there will be no

 9     more litigation, no more case, this is it, it's over with?

10                MS. JACKSON:  Yes.

11                THE COURT:  And you acted on his behalf and acted

12     on his behalf in his best interests.  Is that correct?

13                MS. JACKSON:  Yes.

14                THE COURT:  All right.  Are you having any trouble

15     understanding anything going on, anybody, today?  So far?

16                MS. JACKSON:  Do I have trouble?

17                THE COURT:  Yeah, anybody.  Does anybody have any

18     trouble?

19                MS. JACKSON:  No.

20                THE COURT:  Okay.  Are you -- are you satisfied

21     with Mr. Davis?

22                MS. JACKSON:  Not at all.

23                THE COURT:  Okay.  Does your dissatisfaction have

24     to do with this particular case?

25                MS. JACKSON:  No.  Does it have to do with the case
```

```
 1    or the settlement?

 2                THE COURT:  The settlement.

 3                MS. JACKSON:  No.

 4                THE COURT:  All right.  So nothing that Mr. Davis

 5    has done would have changed your mind about the amount of

 6    money that you received for your child?

 7                MS. JACKSON:  No.

 8                THE COURT:  All right.

 9                Let's see.

10                Ms. Paul, why don't we get to you, and we'll save

11    Ms. Stanley for last.

12                Ms. Paul, you are guardian for?

13         (Pause in proceedings).

14                MS. PAUL:  To -- and -- Chambers.

15                THE COURT:  And what is your relationship with

16    them?

17                MS. PAUL:  I'm their mother.

18                THE COURT:  And you settled their case?

19                MS. PAUL:  Yes.

20                THE COURT:  And do you remember the amount of

21    settlement?

22                MS. PAUL:  30- -- 38,000, 39,000 around in there.

23                THE COURT:  And are you happy with the settlement

24    that they received?

25                MS. PAUL:  Yes.
```

 1              THE COURT:  And you understand that -- that that

 2   some $39,000 is the end of the case?

 3              MS. PAUL:  Yes.

 4              THE COURT:  Meaning, they can't go back to the

 5   estate and challenge it or challenge the settlement after

 6   today?

 7              MS. PAUL:  Yes.

 8              THE COURT:  All right.  What -- what are they doing

 9   now?

10              MS. PAUL:  They're eight.  So they're in the second

11   grade.

12              THE COURT:  All right.  Twins?

13              MS. PAUL:  And they're both straight-A students.

14              THE COURT:  All right.  So how is it to have twins?

15              MS. PAUL:  It's -- I guess it's easy because I

16   don't have any other children, so I don't know what it is to

17   have one.  So it doesn't -- for me, but I'd imagine for

18   someone who only has one and then to have twins, it's

19   probably challenging.

20              THE COURT:  Well, I can only assume having two

21   8-year-olds is very challenging as well.

22              And you're on the telephone because you live in?

23              MS. PAUL:  I live in Las Vegas.

24              THE COURT:  In Las Vegas, and the expense of

25   traveling here I determined would have been onerous.  So I

 1  appreciate --

 2           MS. PAUL:  Yes.

 3           THE COURT:  -- your spending time with us on the

 4  phone.  We're almost done.

 5           You understand -- are you satisfied with your

 6  attorney?

 7           MS. PAUL:  Yes.

 8           THE COURT:  Who represented you and the children?

 9           MS. PAUL:  Well, it started as Brian -- Associates,

10  but I guess it transferred over to Nathaniel Davis.

11           THE COURT:  Okay.  Anything else you want to say?

12           MS. PAUL:  No.  No.

13           THE COURT:  All right.  Let's go on to Ms. Stanley.

14           Ms. Stanley, who are you the guardian for?

15           MS. STANLEY:  Ciara Stanley.

16           THE COURT:  And is that your daughter?

17           MS. STANLEY:  My daughter.

18           THE COURT:  How old is she?

19           MS. STANLEY:  She's 17.

20           THE COURT:  And what is she doing?

21           MS. STANLEY:  She's a junior in high school.

22           THE COURT:  Is she having a pretty good high school

23  career?

24           MS. STANLEY:  It's been some ups and downs, but

25  yeah, all in all.

```
 1              THE COURT:  Is that because you were the mother of
 2  a teenage girl?
 3              MS. STANLEY:  Possibly.
 4              THE COURT:  Yes, I think that that is the beginning
 5  of your ups and downs, and it will last for many years.
 6              MS. STANLEY:  Hopefully.
 7              THE COURT:  Anyway, you also agreed to settlement
 8  on behalf of your daughter in the amount of
 9  $39,000-and-change, which is reflected in the settlement
10  statement?
11              MS. STANLEY:  Correct.
12              THE COURT:  And you understand that is the end of
13  this litigation completely.
14              MS. STANLEY:  Yes.
15              THE COURT:  You can't go back and try to get more
16  money from the estate.
17              MS. STANLEY:  Correct.
18              THE COURT:  And you did this on her behalf because
19  you thought it was in her best interests.  Is that correct?
20              MS. STANLEY:  Exactly.
21              THE COURT:  Are you satisfied -- who represented
22  you?
23              MS. STANLEY:  Mr. Davis.
24              MR. MACK:  Mack.
25              THE COURT:  Mr. Mack.
```

1           MS. STANLEY:  -- yes.  I'm sorry.

2           THE COURT:  Are you satisfied with Mr. Mack's

3    representation?

4           MS. STANLEY:  Yes.

5           THE COURT:  All right.  Do you have any questions

6    of the Court?

7           MS. STANLEY:  No.

8           THE COURT:  All right.  Let me just go back, which

9    is your relationship with the child?

10          FEMALE SPEAKER:  I'm her mother.

11          THE COURT:  And who else did I miss?

12          We know you, Mr. Chambers.

13          And what is your relationship with the child?

14          FEMALE SPEAKER:  I'm his mother.

15          THE COURT:  Okay.  So all the guardians here are

16   the mothers of the children, and they have agreed that they

17   have settled the case because they thought it was in the best

18   interests of their children.

19          Is that correct, everybody?

20          UNIDENTIFIED SPEAKERS:  Yes.

21          THE COURT:  All right.

22          MS. PAUL:  Yes.

23          THE COURT:  Thank you, Ms. Paul.

24          So I've reviewed the disbursements in the case, and

25   in light of counsel's representation that he understands and

 1   abides by New Jersey Court Rule 1:21-7, I find them to be

 2   fair and reasonable under the circumstances, as I have spoken

 3   to, under oath, each of the guardians who are also the

 4   mothers of the children that received the settlements.

 5          I'm satisfied that the amounts are fair and

 6   reasonable.  I've reviewed the complaint.  I've reviewed the

 7   settlement statement.  And based on the review of this

 8   record -- of the record and the hearing today, I'm satisfied

 9   that it adequately protects the interests of the children,

10   based on the allegations in the complaint.

11          I will -- based on the record, I will order that

12   disbursements be made according to the settlement statement.

13   The -- the fees were deposited with the Surrogate, Mr. Mack,

14   and --

15          MR. DAVIS:  There's only one -- everyone except for

16   Ms. Lewis's money, that was -- I was about to transfer it in

17   when they had the hearing, so now that we've finished today,

18   I'll have it by the end of the week.

19          THE COURT:  Okay.

20          MR. MACK:  Yes, Judge, on behalf of Ms. Stanley, it

21   was -- and I have a property-only guardian certificate from

22   the Surrogate dated May -- February 7th, 2014.

23          THE COURT:  All right.  So in accordance with the

24   settlement statement, as I reviewed, there are $19,000,

25   128 -- 19,128.35 dollars in -- in expenses.  And there were

1    extra expenses, Mr. Mack, with respect to Ms. Stanley -- or

2    different expenses.

3              MR. DAVIS:  Well, Your Honor, each -- each mother

4    had their own individual expenses in regards to their own

5    individual deposition and own individual service of the

6    complaint.

7              THE COURT:  So those expenses that I read before,

8    that list of fees --

9              MR. DAVIS:  That was -- that was the total for --

10             MR. MACK:  For everyone.

11             MR. DAVIS:  -- disbursed for everyone.

12             THE COURT:  That included Ms. Stanley.

13             MR. MACK:  Yes.

14             THE COURT:  Okay.  Good.

15             MR. MACK:  That included Ms. Stanley, but then

16   after her case started, again, there were some additional

17   expenses for filing fees and a particular deposition to her

18   specifically, which totalled $1,268.40.  And you have a copy

19   of that --

20             THE COURT:  Yes, I do.

21             MR. MACK:  -- settlement statement.

22             MR. DAVIS:  And each individual child has expenses

23   with regards to the filing fee, which is $350 each.  And

24   deposition fees, that was listed in the settlement.

25             THE COURT:  The Surrogate filing fee of $65 applies

1    to each guardian separately.

2              MR. DAVIS:  Yes.

3              THE COURT:  And, Ms. Stanley, you did sign off on

4    the settlement statement as well; correct?  I have your

5    signature on your settlement statement.  So you reviewed

6    those expenses.

7              MS. STANLEY:  Yes.

8              THE COURT:  Is that correct?

9              MS. STANLEY:  Correct.

10             THE COURT:  And your net settlement was $38,000 --

11   I'm sorry, $38,832.64 because of those -- those additional

12   expenses.

13             Just give me one minute.

14             I think that covers everything.

15             MR. DAVIS:  Yes, Judge.

16             THE COURT:  One last time, anybody else,

17   Ms. Benjamin, anything else you can help me with?

18             MS. BENJAMIN:  No, Your Honor.

19             THE COURT:  Thank you.

20             MR. MACK:  Judge, I --

21             THE COURT:  Mr. Mack, yes.

22             MR. MACK:  One question.  You did issue a report

23   and recommendation approving the settlement.  I guess is

24   which -- where all this confusion that we discussed in the

25   conference call earlier came about, and that was filed

 1  February 4th, 2014.

 2              Is there going to be another -- another one filed,

 3  or do we rely on this?

 4              THE COURT:  I think we're going to file a new

 5  report and recommendation because we have to attach the

 6  transcript.

 7              MR. MACK:  Okay.

 8              THE COURT:  So that was -- as I said, a discussion

 9  of entering the order, more than a "friendly."  This was the

10  "friendly" where the guardians were under oath.

11              MR. MACK:  Understood.

12              THE COURT:  The formal "friendly."

13              So based on the record before me, I will approve

14  the settlement and sent it back to Judge Hayden.  She's got

15  to sign off on it.  And that will happen as soon as we

16  possibly can do that.

17              So, Ms. Lewis, I know that you're waiting for the

18  funds.  It should not be much longer.

19              MS. LEWIS:  That's fine.

20              THE COURT:  All right.

21              I really appreciate people taking time out of their

22  day.  I know it's difficult to do that.  But we did have to

23  do this.  And I hope that this is officially the end the

24  case.  Thank you for your time.

25              UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

1             THE COURT:  Thank you.

2             MS. PAUL:  Thank you.

3             THE COURT:  Thank you, Ms. Paul.

4             (Conclusion of proceedings at 11:27 A.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        Certification

2        I, SARA L. KERN, Transcriptionist, do hereby certify

3   that the 35 pages contained herein constitute a full, true,

4   and accurate transcript from the official electronic

5   recording of the proceedings had in the above-entitled

6   matter; that research was performed on the spelling of proper

7   names and utilizing the information provided, but that in

8   many cases the spellings were educated guesses; that the

9   transcript was prepared by me or under my direction and was

10  done to the best of my skill and ability.

11       I further certify that I am in no way related to any of

12  the parties hereto nor am I in any way interested in the

13  outcome hereof.

14

15

16

17

18  S/ *Sara L. Kern*                    29th of May, 2014

19  _____      _____
    Signature of Approved Transcriber              Date

20

21
    Sara L. Kern, CET**D-338
22  King Transcription Services
    901 Route 23 South, Center Suite 3
23  Pompton Plains, NJ 07444
    (973) 237-6080
24

25